Filed 8/7/26  Yehuda v. Rubinstein CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHARONA YEHUDA, | B341183 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC685560) |
| ARTURO RUBINSTEIN et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph Hammock, Judge.  Reversed in part with directions.

Tesser Grossman, Alec Schulman, and Brian M. Grossman for Defendants and Appellants.

Markun Zusman & Compton, Steven M. Goldberg, Andrew P. Danza, and Kevin K. Eng for Plaintiff and Respondent.

\* \* \* \* \* \*

A former friendship and business partnership gone awry spawned years of multiple lawsuits across multiple jurisdictions, all culminating in this current action for an accounting of 44 specific transactions between the former friends.  There is no dispute that the former friends often failed to follow corporate formalities and often relied on each other's various shell entities to serve as conduits for monetary transfers amongst their ventures.  Tracing the transactions at issue in this action was, therefore, a herculean task.  Nevertheless, it was the friend who initiated this action who bore the burden of proving entitlement to recovery of funds from certain transactions.  Because there is no evidence in the record supporting the friend's recovery of a $500,000 loan and $250,000 transfer, and because there is no legal basis to disallow a $300,000 credit against the friend, we reverse the judgment only as to those transactions and the attendant prejudgment interest.

### FACTS AND PROCEDURAL BACKGROUND

While the parties' dispute presented to the trial court was wide in scope and convoluted in nature, that dispute has been substantially narrowed on appeal by virtue of multiple concessions of fact and abandonment of arguments.  We therefore limit our recitation of the facts and procedural background to only those portions pertinent to the transactions at issue in this appeal.[1]

---

1      We draw some of the facts and quoted passages summarized below from the Eleventh Circuit's opinion involving

2

## I.     Ownership of the Florida Hotel

"For many years, Arturo Rubinstein was a close friend to Yoram and Sharona Yehuda.[2]  So when the Yehudas found themselves in financial trouble, they turned to Rubinstein for help."  Specifically, through Sharona's family trust, the Yehudas owned a 50.5 percent membership stake in a limited liability company (LLC) whose sole asset was a beachfront hotel in Florida.  They bought the hotel in 2007, using $2,683,393 of their own money and taking out a $6.5 million mortgage secured against the hotel.  But when the mortgage was coming due in the fall of 2013, the Yehudas could not pay it, nor could they refinance the loan because they had poor credit.

So in September 2013, the Yehudas "cut a deal with [] Rubinstein, under which the trust would assign its 50.5 [percent] interest" in the LLC to Rubinstein's investment company and, in return, Rubinstein would help the Yehudas obtain financing. Their agreement was never reduced to writing.  According to the Yehudas, this was a temporary assignment, with Rubinstein agreeing to return the majority interest in the LLC after financing was obtained.  According to Rubinstein, this was a permanent assignment.  These diametrically opposed positions were litigated in a federal lawsuit and, as discussed in more detail *infra*, a jury accepted Rubinstein's version of events.

The LLC filed for bankruptcy on the eve of the mortgage's maturity date.  The bankruptcy proceedings concluded when the

---

a dispute between the parties.  (*Rubinstein v. Yehuda* (11th Cir. 2022) 38 F.4th 982 (*Rubinstein*).)  A copy of the opinion was admitted into evidence.

[2]     We refer to the Yehudas by their first names to avoid confusion.  We mean no disrespect.

LLC obtained a loan from another bank that paid off all but $1 million of the original mortgage. Rubinstein helped cover the balance.

## II.    The $500,000 Loan

To help the Yehudas obtain financing as promised, Rubinstein reached out to an old friend who agreed in March 2014 to provide a loan of $500,000. The $500,000 was deposited into Rubinstein's corporate account. Though this was the "big-ticket" transaction vigorously challenged at trial in this case, there is no dispute on appeal that the $500,000 loan from Rubinstein's friend was *to the Yehudas* and that *the Yehudas* repaid it with interest six months later. There also is no dispute that Rubinstein—at the time, owning the majority interest in the LLC although the Yehudas believed they were the beneficial owners—paid the $500,000 to the LLC's bankruptcy attorneys.

## III.    The $250,000 Transfer

In September 2014, Sharona's sister transferred $250,000 of Sharona's family investment money to Rubinstein's corporate account. There is no dispute that Rubinstein—at the time, owning the majority interest in the LLC although the Yehudas believed they were the beneficial owners—paid the $250,000 to the LLC's bankruptcy attorneys.

## IV.    The $300,000 Credit

In February 2013—months before the Yehudas assigned their interest in the LLC to Rubinstein—the Yehudas had one of their other companies issue a cashier's check in the amount of $350,000 to the LLC to pay their "member contribution." Only $305,000 of that contribution was the Yehudas'; the other $45,000 was a contribution by a different member in the LLC. The Yehudas had obtained $300,000 of their $305,000

4

contribution by having Rubinstein first wire $300,000 from his corporate account to the Yehudas' other company.

## IV. The Yehudas Sell the Hotel and Receive $4 million in Profits

In December 2016, the Yehudas sold the hotel for $13.5 million—without Rubinstein's knowledge. The Yehudas received $4 million in sale proceeds; Rubinstein, none.

## V. The Hotel Litigation

Rubinstein (along with his investment company and the LLC) sued the Yehudas and Sharona's trust in federal court in Florida in 2017. They proceeded to a two-week jury trial in July 2019. The jury found that Rubinstein was the owner of the 50.5 percent interest in the LLC and, therefore, by selling the hotel behind his back, (1) Sharona and the trust were liable for fraud, and (2) the Yehudas and the trust were liable for conversion. The jury awarded Rubinstein $1.5 million in compensatory damages and $2.5 million in punitive damages.[3] This totaled $4 million— the same amount as the Yehudas' share of the hotel sale proceeds.

## VI. This Accounting Action

### A. *Operative complaint*

On December 4, 2017, Sharona (on behalf of the trust) brought the instant lawsuit against Rubinstein and his investment company. Because the lawsuit was "treated by the parties and the court as a final accounting between the parties to

---

[3] The jury had reduced Rubinstein's $1.5 million in damages by $500,000 for failure to mitigate, but that reduction was reversed on appeal. The Eleventh Circuit also ruled that the Yehudas' cross-appeal from the judgment was meritless. (*Rubinstein*, *supra*, 38 F.4th at pp. 995-999, 1001.)

5

clean up after the ownership lawsuit[] concluded," it was stayed pending the outcome of the hotel litigation.

The operative first amended complaint, filed after the stay was lifted in September 2022, asserted causes of action for (1) breach of fiduciary duty, (2) conversion, (3) money had and received, (4) constructive trust, (5) accounting, and (6) declaratory relief. The complaint alleged that based on the Yehudas' understanding that Rubinstein held their funds "for use in various investments, business ventures and transactions" for the Yehudas' benefit, the trust caused around $2.7 million (1) "to be deposited into the bank . . . and/or other accounts owned and/or controlled by" Rubinstein, or (2) "to be paid to third parties on behalf of" Rubinstein, all between July 1, 2011 and October 31, 2014. The complaint further alleged that Rubinstein "falsely claimed that the [funds] were re-payments" owed to him.

**B.    *Trial***

1.    *Testimony*

The parties proceeded to a six-day bench trial in November 2023.

The Yehudas testified that they were entitled to recover their repayment of the $500,000 loan and the sister's $250,000 transfer because once Rubinstein was found the majority owner of the LLC in the hotel litigation, the Yehudas could "claim[] back" the funds they had invested in the LLC at a time they believed they were the beneficial owners of the 50.5 percent membership interest. In Sharona's words, "why should I be paying for the [hotel's expenses]" if "I have to give [] back" the hotel sale proceeds to Rubinstein?

6

### 2. *Motion for judgment*

Rubinstein moved for judgment at the close of the Yehudas' case in chief, but the trial court deferred ruling on that motion until the end of trial. Following post-trial briefing, the court granted the motion as to many of the 44 transactions for being barred by the statute of limitations. One of those time-barred transactions was the Yehudas' $305,000 membership contribution to the LLC. On the other side of the ledger, however, Rubinstein claimed a credit for the $300,000 he wired to the Yehudas toward their $305,000 membership contribution.

### 3. *Closing argument briefs*

The parties then submitted closing argument briefs.

The Yehudas argued that Rubinstein converted the $500,000 loan and the $250,000 transfer by defrauding the Yehudas into believing they were still the owners of the LLC, only to then obtain a judgment against them for their conduct as owners in selling the hotel. As for the $300,000 credit, the Yehudas argued that even though their membership contribution was time-barred, the contribution was merely "the second half of a combined transaction" and, therefore, it would be "grossly inequitable" to allow the first half of the transaction—that is, the $300,000 wired from Rubinstein's corporate account to the Yehudas' other company—to be credited to Rubinstein because Rubinstein was now the majority owner of the LLC so he "solely benefitted from" the $300,000 he wired the Yehudas.

Rubinstein argued that the Yehudas were not entitled to recovery of the $500,000 loan and $250,000 transfer because he applied those funds toward rescuing the hotel in bankruptcy and when the hotel was sold, it was the Yehudas—not Rubinstein— who benefitted by retaining the sale proceeds. Rubinstein argued

7

that the Yehudas could not rely on the jury's verdict in the hotel litigation to undo that benefit flowing to them. As for the $300,000 credit, he asserted that the Yehudas' equity-based argument was "nonsense."

### C. *Statement of decision*

The trial court issued a statement of decision on May 17, 2024. The court found the trust was entitled to funds related to the $500,000 loan and $250,000 transfer. To support that ruling, the decision states that the court "adopts the reasoning set forth" on a certain page of the Yehudas' closing argument brief. Specifically, that it is "plausible" the jury's damages award in the hotel litigation "was intended to allow" the Yehudas "to keep" their "initial purchase funds" used toward the hotel or that the "jury simply added up $1.5 million in expenses paid [by Rubinstein] starting in 2012" and awarded it to him. The court did not credit Rubinstein for the $300,000 wire toward the Yehudas' membership contribution but its reasons for doing so are not reflected in the statement of decision.

Rubinstein objected to the statement of decision on the grounds that, as pertinent here, (1) the court was required to identify which cause(s) of action supported the trust's recovery, as Rubinstein had repeatedly argued in his post-trial briefs that the Yehudas "did not allege a cognizable cause of action as to these [] transfers"; and (2) the court was required to provide "reasoning" for "disallow[ing]" the $300,000 credit for Rubinstein's wire toward the Yehudas' membership contribution.

The court denied the objections as "unnecessary and/or without merit" and declined to "explain in *greater* detail the factual and/or legal basis of its decision" because the statement of

8

decision was "more than needed or required to explain th[e] [c]ourt's reasoning[]."

**D.** *Judgment*

The trial court entered a monetary judgment, plus prejudgment interest, for Sharona's trust.[4]  That judgment was used "as an offset" against Rubinstein's judgment in the hotel litigation, because the Yehudas' debt on that judgment "far exceed[ed]" what they were awarded in this case.

**E.** *Appeal*

Rubinstein timely filed this appeal.

**DISCUSSION**

Rubinstein challenges the judgment in three ways:  (1) there is no evidence to support awarding the trust the $500,000 loan and the $250,000 transfer; (2) Rubinstein is entitled to a credit for his $300,000 wire toward the Yehudas' membership contribution; and (3) the trust's right to prejudgment interest never vested.

**I.    Governing Law**

**A.    *Standard of review***

A statement of decision shall "explain[] the factual and legal basis for [the trial court's] decision as to each of the principal controverted issues at trial . . . ."  (Code Civ. Proc., § 632, subd. (a).)  The court is required to state the ultimate, rather than evidentiary, facts.  (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125.)  A statement of decision that

---

4      The total amount of the judgment was $1,336,852 in "damages" and prejudgment interest in the amount of $169,473.79.  Of the damages, only the $500,000 loan, $250,000 transfer, and disallowance of the $300,000 credit is at issue in this appeal.

9

satisfies these standards "facilitates appellate review by revealing the bases for the trial court's decision." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293.)

In reviewing a judgment based upon a statement of decision, we review questions of law de novo and findings of fact for substantial evidence. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) Substantial evidence review ordinarily requires us to liberally construe the findings of fact to support the judgment and to consider the evidence in the light most favorable to the prevailing party. (*Ibid.*) However, that standard of review is altered where the trial court's statement of decision is inadequate. "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . ., it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634; *Thompson*, at pp. 981-982.)

**B.** *Elements of the causes of action*

The trial court's statement of decision here did not specify on which causes of action the Yehudas prevailed. Of the six causes of action pleaded in the operative complaint, only four appeared in play at trial: (1) breach of fiduciary duty, (2) conversion, (3) money had and received, and (4) accounting.

To establish breach of fiduciary duty, the Yehudas bore the burden at trial of proving (1) Rubinstein owed them a fiduciary duty, (2) Rubinstein breached that duty, and (3) the Yehudas suffered damages as a result. (*Kaushanksy v. Stonecroft Attorneys, APC* (2025) 109 Cal.App.5th 788, 805.)

10

To establish conversion, the Yehudas bore the burden at trial of proving (1) they own or have a right to possession of the funds, (2) Rubinstein converted the funds by a wrongful act, and (3) they suffered damages. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240; see also *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 144 ["wrongful act" element does not require bad faith].)

To establish money had and received, the Yehudas bore the burden at trial of proving (1) Rubinstein received money intended to be used for the benefit of the Yehudas, (2) the money was not used for the Yehudas' benefit, and (3) Rubinstein has not given the money to the Yehudas. (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454.)

To establish an accounting, the Yehudas bore the burden at trial of proving (1) they had a relationship with Rubinstein that requires an accounting, and (2) some balance is due to the Yehudas that can be ascertained only by an accounting. (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

Common among these causes of action is the element of damages suffered by the Yehudas. More to the point, the Yehudas were required to prove Rubinstein owed them money from the transactions at issue pursuant to a viable theory of liability.

## II. Analysis

### A. *$500,000 loan and $250,000 transfer*

No substantial evidence supports the trial court's finding that Rubinstein owes the trust for the $500,000 loan from his friend and the $250,000 transfer from Sharona's sister.

To begin, there is no dispute that these funds were used for the Yehudas' benefit. The Yehudas affirmed that the funds were

paid to the LLC's attorneys to obtain a new mortgage for the hotel property in the bankruptcy proceedings, and the Yehudas believed at that time that they were the beneficial owners of a majority stake in the hotel. The record is uncontroverted that the Yehudas received a $4 million-profit from the sale of the hotel.

The Yehudas introduced no evidence at trial from which we could infer that their share of the hotel sale proceeds did *not* compensate them for the $500,000 loan and $250,000 transfer they secured to benefit the LLC in its bankruptcy proceedings. To bridge this gap in the evidence, the Yehudas asserted at trial that their entitlement to these funds was triggered by the jury's verdict for Rubinstein in the hotel litigation because the Yehudas had to turn over their profit to Rubinstein as the legal owner. Though the jury's award *totaled* $4 million, only $1.5 million of it was compensatory damages; the remainder was allocated to punitive damages for fraud. There is no evidence in the record— and no presumptions that can be drawn from the verdict form— as to what accounted for the $1.5 million awarded to Rubinstein. More to the point, the Yehudas fail to explain any viable theory of liability for recovering these funds under any scenario: (1) if they were the beneficial owners of the LLC, the funds were used for their benefit, and (2) if they are not the owners, as adjudicated in the hotel litigation, they cannot collaterally attack the jury's findings from that case—the appropriate remedy (which they pursued) was direct appeal. (See *F.E.V. v. City of Anaheim* (2017) 15 Cal.App.5th 462, 471 ["'A collateral attack is an attempt to avoid the effect of a judgment or order made in some other proceeding'"].)

12

In its statement of decision, the trial court adopted the Yehudas' interpretation of the jury's damages award—that it is "plausible" the jury effectively allowed the Yehudas to retain $2.5 million of the hotel sale proceeds to compensate them for their initial purchase of the hotel and that, as a result, they were never repaid the $500,000 loan and $250,000 transfer. This approach to interpreting the jury's damages award is based on theoretical possibility rather than substantive evidence. Evaluating the trial court's rationale to the extent we can, there is zero evidence in the record that would support *any* interpretation of the jury's award—whether the interpretation proffered by the Yehudas (and adopted by the trial court) or by Rubinstein, that is, the investments in the hotel benefited the Yehudas in that they ultimately sold the hotel for a profit.[5]

### B. *$300,000 credit*

There is no basis to support the trial court's refusal to credit Rubinstein $300,000 for the funds he wired to the Yehudas to pay their membership contribution to the LLC. (See Code Civ. Proc., § 431.70 [entitlement to offset]; *Dillon v. Cross* (1907) 5 Cal.App.766, 770.) Despite Rubinstein's objection to the statement of decision for lacking any findings on this controverted issue, the court provided no rationale for why it denied Rubinstein this credit. As such, we need not infer that the court decided facts regarding this issue in the Yehudas' favor. (*Thompson*, *supra*, 6 Cal.App.5th at pp. 981-982.) To the extent

---

[5] Given the lack of evidence to substantiate *any* interpretation of the verdict, we need not reach the parties' arguments regarding whether the trial court was legally permitted to select a prevailing interpretation or whether Rubinstein invited that purported legal error.

13

the trial court based its denial of Rubinstein's $300,000 credit on equitable principles, we fail to see an equitable result in the court's ruling. Rubinstein gave the Yehudas funds to pay their membership contribution at a time they owned the majority stake in the LLC. The Yehudas failed to timely bring a claim to recover that membership contribution, and it is unclear how they are entitled to recover it at all. While the Yehudas assert "there was evidence" at trial that they "immediately had that money transferred back to [the LLC], and thus Rubinstein retained the benefit of the $300,000," they cite nothing in the record to support that contention. Clearly the equities favor Rubinstein.

### C. *Prejudgment interest*

Because we reverse the trial court's award to the Yehudas of the $500,000 loan and $250,000 transfer, we have no occasion to reach the parties' arguments regarding when the Yehudas' right to recover those funds "vested" for purposes of prejudgment interest.

## DISPOSITION

The judgment is reversed in part; we remand for the trial court to enter a judgment that (1) reduces the damages awarded to the trust by $750,000, (2) incorporates a $300,000 credit to Rubinstein, and (3) adjusts the amount of prejudgment interest accordingly. The judgment is affirmed in all other respects. Rubinstein is entitled to costs on appeal.

14

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

KUMAR, J.*

We concur:

MOOR, Acting P. J.

BAKER, J.

---

* Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15